# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## JOHN LINDSAY v. COMMONWEALTH.

### January 18, 1923.

1. HOMICIDE—*Reasonable Doubt—New Trial—Evidence Held Insufficient to Sustain Conviction of Murder in the First Degree—Case at Bar.*—In the instant case, a trial for murder, there was no substantial conflict in the evidence, which is peculiarly for the determination of a jury. Deceased's statement that she shot herself and that accused was not present did not conflict with the statements of other witnesses that they saw accused enter the house at or about the time the shot was heard, because there was more than one room in the house. Although the Supreme Court of Appeals is most reluctant to disturb a verdict which has been approved by the trial court, yet, after giving all of the evidence in the record most careful consideration, the court was driven to the conclusion that, unless the rule which requires the Commonwealth to prove crime to the exclusion of every reasonable doubt was to be abrogated, the judgment in the instant case must be reversed.

2. CRIMINAL LAW—*Evidence—Reasonable Doubt—Preponderance of Evidence.*—That there may be good reason for fair-minded men to differ as to whether or not the accused is the guilty agent is not sufficient to support a conviction in a criminal case, which is not to be determined by the preponderance of the evidence. A mere suspicion or a preponderance of evidence against the accused is insufficient.

Error to a judgment of the Circuit Court of Orange county.

*Reversed.*

The opinion states the case.

*Will A. Cook* and *George L. Browning*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General*, for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused has been found guilty of murder in the first degree and sentenced to thirty years confinement in the penitentiary. The only question which requires our consideration is whether the evidence is sufficient to support the verdict.

This is a fair summary of the outstanding facts: On the morning of July 4, 1921, at about ten o'clock, a. m., Betty Mills, with whom the petitioner lived in unlawful cohabitation, was shot in the abdomen, and died on the afternoon of the same day. The accused was seen and accosted on the highway in the immediate vicinity of and going towards the house in which he and the deceased lived, and was seen in the house just after the shot was heard. There is evidence that he had cursed the deceased on that morning at about seven o'clock; that just before the occurrence a witness near by heard "a sound like somebody was fussing and heard a man say to a woman, 'Shut up, God damn you;' " and this witness said he had gone about twenty steps further when he heard the report of the gun. Another witness, fixing the time about eight or nine o'clock in the morning, saw the accused go towards their joint dwelling and shortly thereafter heard the deceased say, "Oh John, Oh John!" and then heard a gun shoot. Another witness heard the accused tell the deceased between six and seven o'clock in the morning that "if she didn't shut up he would take something and kill her." These witnesses were not in the actual presence of the parties, but outside of their dewelling and near enough thereto to recognize their voices. There was also testimony to the effect that the accused and the deceased lived together upon intimate and friendly terms, about like people of their class usually appear to associate with each other;

that she had recently been to a hospital and he had paid part of her medical expenses there. The physician testified that the wound was about ten inches long, beginning above the pelvic bone, extending to such bone and about one inch to the right of the median line, with the intestines protruding from the wound. He also expressed the opinion that this wound could have been made either in an attempt to commit suicide or in a struggle for the possession of the gun, as well as deliberately by the accused, but if thus killed by the accused she must have been either sitting down, or down upon her hands and knees; that from the character of the wound it was just as probable that the deceased was accidentally shot, or shot herself, as that she was shot by the accused; that she stated to him, the physician, that she was down on the floor when shot, and repeatedly stated to him in the presence of several others during the day that the wound was the result of an accident, and that the accused was not present when she was shot. All of this evidence was introduced by the Commonwealth.

The only witness for the defense was the sheriff of Orange county, W. C. Bond, who arrested the accused, and thus testified: "When I walked in the room John was either sitting on the bed or standing by the bed and I called him to the door and put a pair of handcuffs on him and put him in the car in charge of the chauffeur and went back and asked Betty how the trouble happened. John (the accused) was not present when she was talking to me. She said she started to house cleaning and—her bed was right across there (illustrating), her washstand back here to the right, under the stairway, and the bureau kind of with the southwest corner of the house—she said she was carrying that gun from the washstand over to the bureau and struck the gun

against the rocker, or her foot, she didn't know which' and caused it to go off." He also testified, in effect' that she knew him and called him by name. He also said: "My recollection is that Betty's words were these: 'I shot myself; John was not here;' or 'John was not here; I shot myself.' I don't recollect which way she put it." There are other incidental facts, but none of sufficient significance to affect our conclusion.

[1, 2] It is observed that there is no substantial conflict in the evidence, so that it is not the usual question which is peculiarly for the determination of the jury. The woman's statement that the accused was not there may be easily reconciled with the statements of the other witnesses that they saw him enter the house at or about the time the shot was heard, because there was more than one room on the bottom floor of their dwelling, and another one upstairs. We are always most reluctant to disturb a verdict which has been approved by the trial court, but giving all of the evidence in this record our most careful consideration, we are driven to the conclusion that unless the rule which requires the Commonwealth to prove crime to the exclusion of every reasonable doubt is to be abrogated, this judgment must be reversed. As indicated, the chief question is not as to which of the witnesses who testified are to be believed, for there is no reason for disbelieving any of them. That there may be good reason for fair-minded men to differ as to whether or not the accused is the guilty agent, is not sufficient to support the conviction for a criminal case, which is not to be determined by the preponderance of the evidence. That there is a reasonable doubt of the guilt of the accused is believed to be evident. In our view of the testimony, the verdict can only be explained by the fact that the jury misunderstood the instructions of the court, which clearly told them that

they could not convict unless the evidence showed that the prisoner was guilty to the exclusion of every reasonable doubt. They must have thought that a mere suspicion or a preponderance of the evidence against the accused was sufficient. Our conclusion, therefore, is to reverse the judgment and remand the case for a new trial if the Commonwealth shall be so advised.

*Reversed.*